UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JESMAIN SIDDIQUA,

                            Plaintiff,

v.                                                      1:14-CV-0372
                                                        (GTS/DJS)
NEW YORK STATE DEPARTMENT OF
HEALTH,

                            Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

SALAZAR AND ERIKSON LLP                                 DANA L. SALAZAR, ESQ.
  Counsel for Plaintiff
573 Columbia Turnpike, Building 2
East Greenbush, New York 12061

HON. BARBARA UNDERWOOD                                  JOSHUA E. McMAHON, ESQ.
Attorney General for the State of New York              Assistant Attorney General
  Counsel for Defendant
The Capital
Albany, New York 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action pursuant to the Family Medical Leave Act

("FMLA") filed by Jesmain Siddiqua ("Plaintiff") against the New York State Department of

Health ("NYSDOH" or "Defendant"), is (1) Defendant's motion for summary judgment, and (2)

Plaintiff's motion for summary judgment.  (Dkt. Nos. 68, 69.)  For the reasons set forth below,

Defendant's motion for summary judgment is denied, and Plaintiff's motion for summary

judgment is denied.

# I. RELEVANT BACKGROUND

## A. Plaintiff's Complaint

Generally, in her Complaint, Plaintiff asserts two claims. (Dkt. No. 1 [Pl.'s Compl.].)

First, Plaintiff claims that Defendant interfered with her right to use FMLA-qualified leave time

because she (a) initially received approval to use FMLA leave time to care for her mother, (b)

was notified that she would be subject to discipline after she actually began to use that FMLA

leave time, (c) ceased using FMLA leave time in order to prevent further discipline, and (d) was

eventually terminated from her employment because she had used her FMLA leave time. (*Id.* at

¶¶ 21-24.)

Second, Plaintiff claims that Defendant retaliated against her for exercising her rights

under the FMLA because she was disciplined for using FMLA leave time and eventually

terminated as a result of her use of that FMLA leave time. (*Id.* at ¶¶ 27-28.)

## B. Undisputed Material Facts on Defendant's Motion for Summary Judgment

Unless otherwise noted, the following facts were asserted and supported with accurate

record citations by Defendant in its Statement of Material Facts and expressly admitted by

Plaintiff in her response thereto or denied without appropriate record citations. (*Compare* Dkt.

No. 68, Attach. 10 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 71, Attach. 1 [Pl.'s Rule 7.1

Resp.].)

1. Plaintiff began her employment with NYSDOH in 2006 as an Information
   Technology Specialist 2, Grade 18.

2. Plaintiff received a Notice of Discipline ("NOD") in May 2008 charging her with
   misconduct.

3. Therein, Plaintiff was reported to have "yelled at [her] supervisor at his workstation for approximately 15 minutes . . . publically insult[ing] him in a loud tone of voice [and] making comments including: 'you are a freak! You have mental problems. You scratched my BMW and Mercedes. You should retire so someone can run the office who knows what they are doing. You are just padding your retirement.'"

4. Plaintiff contested the charges through the filing of a disciplinary grievance and, together with her union, entered into a Stipulation of Settlement pursuant to which NYSDOH agreed to reduce the proposed penalty of 10 days suspension without pay to the surrender of three days of annual leave credits.

5. Plaintiff received a second NOD in January 2009 wherein she was charged with having been absent from work without authorization on, and for having falsified her time and accrual records for, 11 of the 21 business days beginning on August 21, 2008, and extending through September 18, 2008.

6. Plaintiff filed a disciplinary grievance to contest the charge and, together with her union, entered into a Stipulation of Settlement with NYSDOH pursuant to which the proposed penalty of termination was reduced to a 10-day period of suspension and an 18 month incident-specific disciplinary evaluation period.

7. Defendant's policies and procedures for requesting and utilizing FMLA leave are found in its Administrative Policy and Procedure Manual ("APPM"), which is readily available to employees on Defendant's intranet.

8. Employees seeking additional information regarding FMLA leave were referred to the APPM.

9.     The APPM lays out NYSDOH's policies and procedures for requesting and utilizing FMLA leave.

10.    When the need for FMLA leave is foreseeable, the APPM states that an employee should notify his or her supervisor, the Employee Benefits Unit, or the Human Resources Professional Wadsworth Center of a possible need to be absent for a serious health condition that may qualify under FMLA within one to two days of being made aware of the need for such absence.[1]

11.    Once an employee is determined to qualify for FMLA leave, Defendant's FMLA coordinator sends the employee a letter informing him or her of his or her eligibility, along with a letter and medical certification form. The employee has 15 business days to return the certification form to the FMLA coordinator. Until such certification is received, absences are considered FMLA "contingent."[2]

---

[1]     Plaintiff "denies that this is an accurate quote of the cited material" and argues that she notified Ms. Morini of her need to take FMLA leave. (Dkt. No. 71, Attach. 1, at ¶ 14 [Pl.'s Rule 7.1 Resp.].) However, the Court finds that the asserted fact is supported by the evidence cited by Defendant. Additionally, Plaintiff's attempt to add argumentation and/or additional facts to her response is inappropriate. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").

[2]     Plaintiff denies that the asserted fact is an accurate quotation of the cited document, asserts that it is not material, and adds additional facts. (Dkt. No. 71, Attach. 1, at ¶ 15 [Pl.'s Rule 7.1 Resp.].) However, the Court finds that the asserted fact is supported by the evidence cited by Defendant, and, as discussed above in note 1 of this Decision and Order, Plaintiff is not permitted to add additional facts or argumentation in her response. *See Baity*, 51 F. Supp. 3d at 418; *Goldstick*, 2002 WL 1906029, at *1. Additionally, an assertion that an

12.     The APPM further provides that, while an employee is entitled to 12 weeks of FMLA leave in a calendar year, such leave expires on December 31st of each calendar year.  If a qualifying FMLA event continues, the employee must reapply for FMLA and eligibility criteria must be reassessed at that time and, if required, a new medical certification must be obtained.[3]

13.     The APPM also notes that an employee's eligibility for FMLA leave "is determined at the commencement of the first instance of leave for each FMLA qualifying reason in the calendar year."[4]

14.     The APPM notes that "[a]n employee's obligation to provide notice of leave due to a qualifying exigency is triggered when the employee first seeks to take such leave. Where this leave is foreseeable, eligible employees must provide notice to the Department that is reasonable and practicable."  An employee with prior knowledge of a need to be absent is obligated to provide at least 30 days' notice.[5]

---

asserted fact is not material does not constitute an effective denial because it is the Court's duty to determine what facts are material.  *See Zhao-Royo v. New York State Educ. Dep't,* 14-CV-0935, 2017 WL 149981, at *2, n.2 (N.D.N.Y. Jan. 13, 2017) ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court."); *Newmark v. Lawrence Hosp. Ctr.,* 07-CV-2861, 2008 WL 5054731, at *8, n.7 (S.D.N.Y. Oct. 20, 2008) (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material.").

[3]     Plaintiff denies that the asserted fact is an accurate quote of the cited document and adds additional facts.  (Dkt. No. 71, Attach. 1, at ¶ 16 [Pl.'s Rule 7.1 Resp.].)  Defendant's asserted fact is deemed admitted for the same reasons as stated above in note 1 of this Decision and Order.

[4]     *See, supra,* note 3 of this Decision and Order.

[5]     *Id.*

15. Before the events at issue in this matter, Plaintiff had reviewed the policies and procedures contained in the APPM and was familiar with Defendant's employee handbook and time and attendance policies.[6]

16. In 2009, Plaintiff requested permission to take FMLA leave to care for her terminally ill mother from May 11, 2009, to June 14, 2009.

17. As part of that request, Plaintiff provided Defendant with written notification of her intention to take leave, including the dates of, and the reasons for, her planned absence.

18. At the time, Defendant's Senior Personnel Administrator and FMLA Coordinator, Pamela Morini, granted Plaintiff's request contingent upon Plaintiff's ability to provide a completed medical certification form.

19. When Plaintiff returned from her requested leave on June 15, 2009, she provided this form to Defendant and her absence was approved as FMLA leave.

---

[6] Plaintiff denies this asserted fact, arguing that it does not accurately portray her deposition testimony, yet she admits that "policies and procedures were available to her and that she was provided with a employee handbook." (Dkt. No. 71, Attach. 1, at ¶ 21 [Pl.'s Rule 7.1 Resp.].) In her cited deposition testimony, Plaintiff stated that she had access to information concerning time and attendance, that she received a copy of the handbook, and that she "had gone through that book." (Dkt. No. 68, Attach. 5, at 31:23-32:14 [Pl.'s Dep.].) Because Plaintiff's deposition testimony supports Defendant's asserted fact and Plaintiff has offered no contrary evidence, this asserted fact is deemed admitted. *See Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (holding that "the facts set forth in [plaintiff's] statement are deemed established" where defendant denied assertions in plaintiff's S.D.N.Y. Local Rule 56.1 statement but declined to provide record citations in support); *N.Y. Teamsters v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1[a][3] statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations").

20. On December 6, 2010, Plaintiff contacted Ms. Morini and again requested permission to take FMLA leave to care for her terminally ill mother.

21. At that time, Ms. Morini confirmed that Plaintiff met the eligibility requirements for FMLA leave, and that the request itself was for a qualified absence.

22. After verifying Plaintiff's eligibility, Ms. Morini sent her a letter on December 7, 2010, attaching several forms for Plaintiff to review and have completed, including Form WH-381 ("Notice of Eligibility and Rights & Responsibilities") and Form WH-380-E ("Certification of Health Care Provider for Family Member's Serious Health Condition"), the latter of which was to be filled out by Plaintiff's mother's health care provider upon Plaintiff's return to the country.

23. Plaintiff's request to take FMLA leave in late December 2010 or early January 2011 was conditionally granted, contingent upon Plaintiff providing a completed medical certification form from her mother's physician.

24. Plaintiff did not take FMLA leave in late December 2010 or early January 2011.

25. Plaintiff never notified Ms. Morini of her decision to not take FMLA leave in December 2010 or early January 2011.[7]

26. In March 2011, Plaintiff exchanged several emails with her direct supervisor, Michael Pettit.

---

[7] Plaintiff denies this asserted fact, stating that she notified her supervisor on April 2, 2011, and the Director of Human Resources on April 18, 2011. (Dkt. No. 71, Attach. 1, at ¶ 32 [Pl.'s Rule 7.1 Resp.].) However, even if true, Plaintiff's added fact is (a) inappropriate in response to the asserted fact, and (b) irrelevant to whether Plaintiff informed Ms. Morini about deciding not to take leave months previous to April 2011. The asserted fact is therefore deemed admitted.

27.    This exchange began when Mr. Pettit contacted Plaintiff to afford her the opportunity to amend several inaccurate entries that she had made in her time and attendance records during January, February, and March of 2011.[8]

28.    Specifically, Mr. Pettit informed Plaintiff of approximately 18 dates on which she had been absent for all or part of the day, but for which she had failed to appropriately charge accruals.[9]

29.    Plaintiff refused to charge accruals for three dates in January.[10]

30.    On or before March 28, 2011, Plaintiff learned that she would be flying to Bangladesh on April 4, 2011.[11]

31.    On Saturday, April 2, 2011, Plaintiff sent an email to Mr. Pettit stating that she "wouldn't be here (to [the] office) for [a] few weeks due to an unavoidable circumstance."

---

[8]    Plaintiff denies the asserted fact, arguing that it is not an accurate characterization of the cited emails.  (Dkt. No. 71, Attach. 1, at ¶ 35 [Pl.'s Rule 7.1 Resp.].)  Although Mr. Pettit did not use the phrase "inaccurate entries" in these emails, the emails do state that Plaintiff had failed to accurately charge time on multiple days for multiple time sheets, which supports the asserted fact.  This fact is therefore deemed admitted.

[9]    Plaintiff denies this asserted fact, arguing that the cited evidence does not support it.  (Dkt. No. 71, Attach. 1, at ¶ 36 [Pl.'s Rule 7.1 Resp.].)  However, the Court finds that the cited evidence does support the asserted fact and Plaintiff has failed to cite any contradictory evidence.  This fact is therefore deemed admitted.  *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

[10]    Plaintiff denies this asserted fact, objecting to Defendant's reliance on the arbitration award because the Second Circuit found that res judicata and collateral estoppel do not apply to Plaintiff's FMLA claims.  (Dkt. No. 71, Attach. 1, at ¶ 37 [Pl.'s Rule 7.1 Resp.].)  Apart from being irrelevant to the issue at hand, Plaintiff's denial is not supported by evidence contradicting the asserted fact.  This fact is therefore deemed admitted.  *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

[11]    (Dkt. No. 1, at ¶¶ 13, 16 [Pl.'s Compl.].)  *See also* N.D.N.Y. L.R. 7.1(a)(3) ("The record for purposes of the Statement of Material Facts includes the pleadings . . . ."); Fed. R. Civ. P. 56(c)(3) ("The court . . . may consider other materials in the record.").

32.	Plaintiff's April 2, 2011, email did not contain a request.[12]

33.	Plaintiff's April 2, 2011, email did not discuss or reference the FMLA.

34.	Plaintiff's April 2, 2011, email did not discuss or reference a serious personal or family illness.[13]

35.	Plaintiff's April 2, 2011, email did not discuss or reference a date upon which Plaintiff planned to return to work.[14]

36.	Mr. Pettit responded to Plaintiff's email on Monday, April 4, 2011, stating that he "hope[d] that [she was] ok."

37.	Mr. Pettit then informed Plaintiff that he would "follow up with personnel and help determine what steps [she] must take to meet [her] time and attendance obligations."

---

[12]	Plaintiff denies this asserted fact, arguing that the cited evidence reflected a request for leave. (Dkt. No. 71, Attach. 1, at ¶ 39 [Pl.'s Rule 7.1 Resp.].) However, a reading of the email in question confirms Defendant's interpretation that Plaintiff was informing Mr. Pettit that she would be out of the office for a few weeks, not that she was requesting permission to be out of the office for a few weeks. (Dkt. No. 68, Attach. 7, at 35.) This fact is therefore deemed admitted.

[13]	Plaintiff denies this asserted fact, implying that the statement that there were "unavoidable circumstances" was sufficient to reference a personal or family illness. (Dkt. No. 71, Attach. 1, at ¶ 41 [Pl.'s Rule 7.1 Resp.].) However, the Court does not read such a broad interpretation from the vague wording of the email and Plaintiff has provided no contrary evidence. This fact is therefore deemed admitted. *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

[14]	Plaintiff denies this asserted fact, arguing that her statement that she would be away for "a few weeks" indicated when she would return. (Dkt. No. 71, Attach. 1, at ¶ 42 [Pl.'s Rule 7.1 Resp.].) However, given the vagueness of the word "few" and Plaintiff's failure to point to any contradictory evidence, the Court cannot say that Defendant's asserted fact is unsupported by the cited evidence. This fact is therefore deemed admitted.

38. Mr. Pettit requested that Plaintiff "[p]lease keep in touch" concerning her status, and told her that, "if [she] need[ed] assistance, [h]e c[ould] help find the appropriate NYS contacts to assist [her]."

39. On April 5, 2011, Mr. Pettit again emailed Plaintiff and told her that he "hope[d] all [was] well."

40. Mr. Pettit then informed Plaintiff that he had spoken with personnel, and that, if she "plan[ned] on taking more than four days (sounds like you are) and you want to charge sick time, then you need to get approval (four consecutive sick days requires approval from HR). Pam Morini (cc'd) is the contact, if this is what you choose to do."

41. Mr. Pettit also told Plaintiff that, if she "want[ed] to charge vacation/personal/holiday [time] and you have enough time to do so, then all you need is my approval. It appears you have adequate time to charge so please let me know if you want to [do so]."

42. Mr. Pettit then asked that Plaintiff "[p]lease let [him] know which course [she] choose (sic) and [he would] assist in any way [he could]."

43. Mr. Pettit then provided Plaintiff with Ms. Morini's phone number in case Plaintiff needed to contact her with any questions.

44. On April 5, 2011, Ms. Morini also emailed Plaintiff concerning Plaintiff's April 2, 2011, correspondence to Mr. Pettit.

45. Therein, Ms. Morini asked Plaintiff if she was requesting that her absence be considered for eligibility under the FMLA.

46. According to Ms. Morini, she emailed Plaintiff to inform her that any requests for FMLA leave would require a reassessment of Plaintiff's eligibility and the completion of new forms.[15]

47. Plaintiff did not respond to Mr. Pettit, nor did she contact Ms. Morini, until after she had returned to work in late May 2011.

48. On April 18, 2011, Plaintiff sent a letter to Defendant's former Director of Human Resources, Elizabeth Aliberti, stating that she had been on vacation when she "got news from her mother that she [was] critically ill . . . and rushed to see" her.

49. Plaintiff further stated in this letter that the "FMLA Coordinator Ms. Pamela Morini knew my moms (sic) situation and provided me the FMLA form."

50. Plaintiff's letter did not explain how Ms. Morini knew about Plaintiff's mother's situation, what she knew about it, or when she became aware of it.[16]

51. Plaintiff's letter indicated that she planned to return to work on May 23, 2011.

---

[15] Plaintiff denies this asserted fact, arguing that Ms. Morini's testimony showed that Ms. Morini did not intend to reassess Plaintiff's eligibility for that FMLA leave. (Dkt. No. 71, Attach. 1, at ¶ 54 [Pl.'s Rule 7.1 Resp.].) However, in her deposition, Ms. Morini stated that, had Plaintiff informed her that she intended to take FMLA leave in April and May of 2011, Ms. Morini would have "checked her eligibility at that time" and notes that "we don't know if she was eligible in April to qualify" and that, if she had made a proper request for FMLA time, they would have checked her eligibility and "[i]f she was eligible, sent out the paperwork." (Dkt. No. 68, Attach. 6, at 66 [Morini Dep.].) This deposition testimony supports Ms. Morini's affidavit, which is cited as support for Defendant's asserted fact. Plaintiff's denials to the contrary are not supported; this asserted fact is therefore deemed admitted. *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

[16] Plaintiff denies this asserted fact, asserting facts other than those asserted by Defendant. (Dkt. No. 71, at ¶ 58 [Pl.'s Rule 7.1 Resp.].) However, the letter in question supports Defendant's asserted fact in that it does not state anything more than Ms. Morini "knew" of Plaintiff's mother's situation without any further details. (Dkt. No. 69, Attach. 14, at 1.) This fact is therefore deemed admitted.

52. Plaintiff's letter was received by Defendant's Bureau of Employee Relations and Staff Development on April 29, 2011.

53. Plaintiff's letter was not addressed to Ms. Morini, nor was it sent to a member of Defendant's Bureau of Personnel Management.[17]

54. On May 31, 2011, Plaintiff faxed FMLA paperwork to the Employee Benefits Unit, stating that it was for a trip from April 4, 2011, to May 23, 2011.

55. This documentation included the application form and medical certification that Ms. Morini had sent to Plaintiff on December 7, 2010, and which pertained to Plaintiff's request to take FMLA leave in late December 2010 or early January 2011.

56. Plaintiff's May 31, 2011, correspondence included a cover letter informing Ms. Morini for the first time that several incidents had reportedly prevented her from traveling in December of 2010 or January of 2011 as she had originally intended.[18]

---

[17] Plaintiff denies this fact in part, arguing that the letter was sent to Defendant's Bureau of Personnel Management because it was sent to Ms. Aliberti. (Dkt. No. 71, Attach. 1, at ¶ 61 [Pl.'s Rule 7.1 Resp.].)  However, the evidence cited by Plaintiff indicates that Ms. Aliberti was the Director of the Bureau of Employee Relations and Staff Development, not the Bureau of Personnel Management, and Plaintiff has cited no evidence establishing that these two bureaus are the same. (Dkt. No. 69, Attach. 12, at 1.)  This fact is therefore deemed admitted. *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

[18] Plaintiff denies this asserted fact in part, arguing that this cover letter was not "the first time Defendant learned of the reason for the delay in the FMLA leave." (Dkt. No. 71, Attach. 1 at ¶ 66 [Pl.'s Rule 7.1 Resp.].)  However, the evidence cited by Plaintiff does not indicate that she informed anyone, let alone Ms. Morini specifically, of the reasons for not taking her FMLA leave in December 2010 or January 2011, before April 2011.  This fact is therefore deemed admitted. *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

57. Plaintiff further stated that she "decided to go for [her] schedule[d] visit" in April of 2011 when she felt better and decided to use the FMLA paperwork provided to her in December 2010.

58. On May 31, 2011, Ms. Morini, together with Agency Labor Relations Representative and Reasonable Accommodation Coordinator Kathryn Marcello, contacted Plaintiff by teleconference and informed her that her absence from April 4, 2011, through May 23, 2011, would not be classified as FMLA leave.

59. On June 24, 2011, Plaintiff received an NOD containing two separate charges of misconduct.

60. The first charge alleged that Plaintiff had been "absent from work without authorization from beginning of business [on] April 4, 2011, through May 20, 2011, close of business, for a total of 35 days or 262.5 hours."

61. The second charge alleged that Plaintiff had "falsified [her] time and accrual record . . . when [she] indicated that [she] worked [her] regular schedule, when [she, in fact] did not," on three dates in January 2011.

62. Plaintiff grieved the June 24, 2011, NOD and elected to proceed to arbitration, where the matter came before an arbitrator pursuant to the Collective Bargaining Agreement between Defendant and Plaintiff's union, the Public Employees Federation ("PEF"), on December 16, 2011.

63. As part of the administrative process, the arbitrator conducted an evidentiary hearing during which both parties submitted documentary and testimonial evidence and had an opportunity to cross-examine witnesses.

64. Plaintiff (who was represented by PEF's counsel) testified on her own behalf and maintained that she sought and received approval to take FMLA leave to travel to Bangladesh to care for her mother.[19]

65. In an Opinion and Award dated April 5, 2012, the arbitrator found that Plaintiff had failed to provide proper notice of her need for FMLA leave.[20]

66. The arbitrator also found that Defendant had introduced evidence of insubordination in that Plaintiff repeatedly ignored directives from her supervisors "to correct her time and leave records and to use appropriate accrued leave when she was absent from work" on three occasions in January 2011.[21]

67. As to Plaintiff's grievance, the arbitrator granted it in part and denied it in part, finding that "the State ha[d] more than adequately made the case that [the first] charge, standing alone, given [Plaintiff's] prior discipline, warrants termination

---

[19] Plaintiff admits that she asserts that she sought and received approval to take FMLA leave to travel to Bangladesh to care for her mother, but nonetheless argues that Defendant's reliance on the Arbitration Award is improper due to the Second Circuit's mandate, which indicated that the Arbitration Award did not constitute res judicata or collateral estoppel having a preclusive effect on Plaintiff's FMLA claims. (Dkt. No. 71, Attach. 1, at ¶ 75 [Pl.'s Rule 7.1 Resp.].) Because Plaintiff has admitted the underlying asserted fact, and because the Court finds that the Second Circuit's mandate as to res judicata and collateral estoppel does not mean that the Court is barred from considering the Arbitration Agreement as evidence, this fact is deemed admitted.

[20] Plaintiff denies this asserted fact based on the same objections to Defendant's citation to the Arbitration Award discussed above in note 18 of this Decision and Order. (Dkt. No. 71, Attach. 1, at ¶ 76 [Pl.'s Rule 7.1 Resp.].) Because the Court finds Plaintiff's objection unpersuasive for the same reasons, this fact is deemed admitted.

[21] Plaintiff denies this asserted fact, but fails to cite to any evidence substantiating her denial. (Dkt. No. 71, Attach. 1, at ¶ 78 [Pl.'s Rule 7.1 Resp.].) This fact is therefore deemed admitted. *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

from employment."[22]

68.    Plaintiff filed a petition to vacate the arbitration award in New York State

Supreme Court.  By an Order dated September 26, 2013, the New York Supreme

Court dismissed Plaintiff's subsequent Petition to Vacate the Arbitration Award

because, in part, Plaintiff had failed "to demonstrate that she ha[d] a meritorious

cause of action."[23]

69.    Therein, the Supreme Court specifically rejected Plaintiff's arguments that the

arbitrator was biased, did not properly credit her evidence or testimony, and was

not familiar with the FMLA.[24]

70.    While Plaintiff's June 24, 2011, NOD was pending, she was formally counseled

on August 24, 2011, by Mr. Pettit for an "unscheduled absence" that she had

taken the day before.[25]

---

[22]    Plaintiff denies this asserted fact, once again objecting to Defendant's reliance on the Second Circuit's mandate.  (Dkt. No. 71, Attach. 1, at ¶ 79 [Pl.'s Rule 7.1 Resp.].)  Plaintiff's denial is ineffective for the reasons discussed above in notes 19 and 20 of this Decision and Order.  This fact is therefore deemed admitted.

[23]    This fact is deemed admitted.  *See, supra,* note 22 of this Decision and Order.

[24]    *Id.*

[25]    Plaintiff denies this asserted fact, arguing that the August 2011 NOD "was fully resolved in a separate proceeding" and therefore is not relevant, particularly because the termination notice from April 9, 2012, did not mention the subsequent NOD as a basis for the termination.  (Dkt. No. 71, Attach. 1, at ¶ 82 [Pl.'s Rule 7.1 Resp.].)  However, the Court finds that, even if the termination notice did not specifically mention the August 2011 NOD, that does not necessarily mean that the NOD is irrelevant or immaterial for determining whether Defendant engaged in retaliation.  Because Plaintiff has not offered any evidence to counter the truth of the asserted fact, the Court therefore deems this fact admitted.  *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

71.     On that occasion, Plaintiff was counseled because she "left work at lunchtime and then called in sick from home on August 23, 2011.[26]

72.     As part of this counseling, Mr. Pettit noted that Plaintiff "ha[d] a history of" leaving work at lunchtime and then calling in sick for the afternoon.[27]

73.     As part of this counseling, Mr. Pettit reminded Plaintiff that "[s]ick time must be requested no later than two hours after [her] regular start time," and that "these continued unplanned absences negatively impact[ed] the Unit and our Division."[28]

74.     As part of this counseling, Mr. Pettit directed Plaintiff that she would have to "provide medical documentation from a certified medical practitioner for any absences, late arrivals, or early departures due to an illness" in the future, and requested that she "[p]lease respond [as soon as possible] with [him] or [by] sending an email with [her] comments" and "the need to provide" such documentation moving forward.[29]

75.     Plaintiff responded to Mr. Pettit's counseling memorandum with her own, dated August 26, 2011.[30]

---

[26]     *See, supra*, note 25 of this Decision and Order.

[27]     *Id.*

[28]     *Id.*

[29]     *Id.*

[30]     *Id.*

76. Therein, Plaintiff informed Mr. Pettit that his "formal counseling session memo . . . [was] totally a joke."[31]

77. Therein, Plaintiff stated that, "[a]s a supervisor, you never follows (sic) any Civil Service Ethics laws, procedures, or rules," even though "[t]hose administrative policies are very easy [to] access to all of us as you know it's under DOH resource/APPA which has well written and explained (sic)."[32]

78. Therein, Plaintiff claimed to know the "[s]ick time request procedure . . . very well."[33]

79. Therein, Plaintiff stated that, in the future, for "two hours off, [she was] not going to go to [the] doctors (sic) and ask[] for a certificate."[34]

80. Therein, Plaintiff stated that "[t]here [were] more important issues we have and need to address those first in this office," and that her "life and [her] health [were] more important than any paid or unpaid leaves [or] time off policies [and] procedure."[35]

81. Plaintiff's December 6, 2010, request for FMLA leave was a request to travel to Bangladesh to care for her terminally ill mother.

82. Plaintiff's December 6, 2010, request for FMLA leave was not a request to go on vacation.

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

83. Plaintiff did not request FMLA leave to go on vacation.

**C.    Undisputed Material Facts on Plaintiff's Motion for Summary Judgment**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Plaintiff in her Statement of Material Facts and expressly admitted by Defendant in its response thereto or denied without appropriate record citations. (*Compare* Dkt. No. 69, Attach. 19 [Pl.'s Rule 7.1 Statement] *with* Dkt. No. 70, Attach. 1 [Def.'s Rule 7.1 Resp.].)

1. Plaintiff began working at the NYSDOH in September of 2006.

2. She was a member of the Public Employees Federation, AFL-CIO Union during her employment.

3. Plaintiff applied for FMLA leave in early December 2010 by contacting Ms. Morini from Human Resources.[36]

4. At the time she requested the leave, she did not communicate precisely when between the end of 2010 and the beginning of 2011 she would be departing.[37]

---

[36]    Defendant denies this asserted fact; however, the evidence cited by Defendant indicates that Ms. Morini stated that Plaintiff "contacted [her] by phone to request FMLA leave in order to travel to Bangladesh to care for her terminally ill mother." (Dkt. No. 70, Attach. 1, at ¶ 4 [Def.'s Rule 7.1 Resp.]; Dkt. No. 68, Attach. 2, at ¶ 19 [Morini Decl.].) Although the parties dispute whether this request extended to the alleged leave taken in April and May of 2011, such dispute does not contradict the fact that Plaintiff requested FMLA leave in December 2010. This fact is therefore deemed admitted. *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

[37]    Although the Notice of Eligibility related to the December 6, 2010, request listed that the leave would begin on an "undetermined date," an email from Ms. Morini to Ms. Marcello indicates that Plaintiff stated that she would be traveling on her leave "at the end of December 2010 or the beginning of January 2011." (Dkt. No. 68, Attach. 7, at 65, 75.) In addition, Plaintiff concedes that she "originally planned to visit [her] mother in early 2011. . . ." (Dkt. No. 69, Attach. 4, at ¶ 13 [Pl.'s Aff.].)

5.      Ms. Morini approved the leave on December 7, 2010, and forwarded a package of

        documents to Plaintiff with a copy to relevant other people and files.[38]

6.      The Notice of Eligibility and Rights and Responsibilities form noted that, on

        December 6, 2010, Plaintiff notified her employer that she needed leave on an

        "undetermined date" to care for her parent due to her parent's serious health

        condition.[39]

7.      The Notice also states that Plaintiff was eligible for FMLA leave.[40]

8.      The Notice further explained that, while Plaintiff met the eligibility requirements

        for FMLA leave and although she still had FMLA leave available in the

        applicable 12-month period, she was required to provide FMLA medical

        certification upon returning to the country.[41]

9.      The December 7, 2010, conditional approval stated that, "[i]f your leave does

        qualify as FMLA leave, you will have the following rights while on FMLA leave

---

[38]     Defendant denies this asserted fact.  (Dkt. No. 70, Attach. 1, at ¶ 6 [Def.'s Rule
7.1 Resp.].)  However, Ms. Morini's declaration (cited by Defendant) clearly states that Ms.
Morini "confirmed that Plaintiff met the eligibility requirements for FMLA leave" and that
"[a]fter verifying Plaintiff's eligibility, I sent her a letter with (sic) on December 7, 2010,
attaching several forms for her to review and have completed."  (Dkt. No. 68, Attach. 2, at ¶¶ 20-
21 [Morini Aff.].)  Additionally, the Notice of Eligibility form (dated December 7, 2010, and
signed by Ms. Morini) indicates that Plaintiff had been found eligible for FMLA leave to care for
her parent. (Dkt. No. 69, Attach. 5, at 2-3.)  This fact is therefore deemed admitted.

[39]     Defendant denies this asserted fact but provides no evidence that actually
supports that denial.  (Dkt. No. 70, Attach. 1, at ¶ 7 [Def.'s Rule 7.1 Resp.].)  This fact is
therefore deemed admitted.  *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*,
426 F.3d at 648-49.

[40]     *See, supra,* note 39 of this Decision and Order.

[41]     *Id.*

[:] [y]ou have the right under the FMLA for up to 12 weeks of unpaid leave in a

12-month period calculated as: the calendar year (January - December)."

10.    Ms. Morini enclosed the form that Plaintiff would need her mother's doctor to

complete, and she told Plaintiff to submit it upon her return.[42]

11.    Ms. Morini also advised Plaintiff that she did not need to inform her supervisor of

the leave, but that Ms. Morini was the only person Plaintiff needed to contact.[43]

12.    Plaintiff originally planned to visit her mother in early 2011; Plaintiff injured her

eye in January 2011.[44]

13.    The doctor appointments and pain prevented Plaintiff from traveling until April of

2011.[45]

14.    Upon her return in May 2011, Plaintiff submitted the FMLA form from her

mother's doctor to Ms. Morini.[46]

15.    When Plaintiff returned in May 2011, she was told her leave would not be

approved (i.e., it was not classified as FMLA leave).[47]

---

[42]    *Id.*

[43]    Defendant denies this asserted fact, but, again, does not provide any evidence that contradicts or even squarely addresses the asserted fact. (Dkt. No. 70, Attach. 1, at ¶ 12 [Def.'s Rule 7.1 Resp.].) Notably, although Ms. Morini's declaration indicates that "the APPM requires an employee to notify their supervisor or the Employee Benefits Unit of a possible need to be absent for a serious health condition possibly falling under FMLA," this statement does not contradict Plaintiff's assertion that Ms. Morini instructed her otherwise. (Dkt. No. 68, Attach. 2, at ¶ 12 [Morini Decl.].) This fact is therefore deemed admitted. *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319; *N.Y. Teamsters*, 426 F.3d at 648-49.

[44]    *See, supra,* note 39 of this Decision and Order.

[45]    *Id.*

[46]    *Id.*

[47]    *Id.*

16.     Plaintiff was notified on June 24, 2011, that her employer was seeking to terminate her; this occurred 24 days after she returned to work in May 2011.[48]

17.     In 2009, Plaintiff took FMLA leave without incident.

18.     In early 2009, Plaintiff received notice that her mother, who lives in Bangladesh, was quite ill.

19.     She was told that her mother had been diagnosed with stomach cancer.

20.     As a result, Plaintiff requested leave under the FMLA to travel to be with her mother and support her during further diagnosis and initial treatments.

21.     On May 5, 2009, Plaintiff's FMLA request was approved.

22.     Plaintiff was told to submit the medical documentation from her mother's doctor upon her return.

23.     On June 29, 2009, Ms. Morini submitted an interoffice memorandum to Ms. Marcello stating that the first day of Plaintiff's continuous absence was May 11, 2009.

24.     On May 4, 2009, Plaintiff emailed Ms. Morini to inform her that she was using vacation time and sick time between the dates of May 11, 2009, and June 14, 2009.

25.     Ms. Morini answered and confirmed that Plaintiff was "using accruals for [her] FMLA leave and will return the complete FMLA [medical certification] form" to Ms. Morini upon her return.

26.     Plaintiff's 2009 FMLA leave began on May 11, 2009.

---

[48]     *Id.*

27.     Plaintiff returned from that leave on June 15, 2009.

28.     Upon her return, Plaintiff submitted the requested medical documentation.

29.     In late 2010, Plaintiff learned that her mother would require additional care.

30.     On December 6, 2010, Plaintiff contacted Ms. Morini for a second FMLA leave approval.

31.     On December 7, 2010, Ms. Morini sent her a letter and provided forms for her reference and completion.

32.     Ms. Morini notified Plaintiff that she was eligible for FMLA.

33.     Ms. Morini attached the a copy of the FMLA of 1993 from the APPM, dated June 2, 2009, for her reference.

34.     On or before March 28, 2011, Plaintiff learned that she would be flying to Bangladesh on April 4, 2011.[49]

35.     On April 2, 2011, Plaintiff sent her supervisor an email notifying him that she would be out of the office.[50]

36.     More specifically, Plaintiff told her supervisor that she "won't be here (to office) [sic] for a few weeks due to an unavoidable circumstance."[51]

---

[49]     (Dkt. No. 1, at ¶¶ 13, 16 [Pl.'s Compl.].)  *See also* N.D.N.Y. L.R. 7.1(a)(3) ("The record for purposes of the Statement of Material Facts includes the pleadings . . . ."); Fed. R. Civ. P. 56(c)(3) ("The court . . . may consider other materials in the record.").

[50]     Defendant denies this asserted fact.  (Dkt. No. 70, Attach. 1, at ¶ 36 [Def.'s Rule 7.1 Resp.].)  Because there is a dispute between the parties as to whether Plaintiff's absence during this period was considered leave under the FMLA, the Court finds that the above wording of this fact is more appropriate, given that it undisputed that Plaintiff was not present in the office at that time.

[51]     *See, supra,* note 39 of this Decision and Order.

37.     On April 4, 2011, Mr. Pettit responded with the following: "I hope you are okay. I will followup with personnel and help determine what steps you must take to meet your time and attendance obligations."

38.     Further, Mr. Pettit asked Plaintiff to "[p]lease keep in touch and let me know your status.  If you need assistance I can help find the appropriate NYS contacts to assist you."

39.     Because she was traveling overseas, Plaintiff did not receive this email until after her return from Bangladesh.[52]

40.     On April 5, 2011, Mr. Pettit responded again, copied Ms. Morini on his response, and asked Plaintiff whether she was seeking to charge sick or vacation time.[53]

41.     Like the other email, Plaintiff did not receive this email until her return from Bangladesh.[54]

42.     On April 5, 2011, Ms. Morini sent an email to Plaintiff's work email address and asked if her leave was for FMLA.[55]

43.     Plaintiff received this email upon her return from Bangladesh at some point between April 18, 2011, and May 23, 2011.[56]

---

[52]     *Id.*

[53]     *Id.*

[54]     *Id.*

[55]     *Id.*

[56]     *Id.*

44.     On April 12, 2011, Ms. Aliberti sent a letter to Plaintiff's home address and stated that it had come to her attention that Plaintiff had been "absent without authorization since April 4, 2011."

45.     In her letter, she requested that Plaintiff "[p]lease call [her] supervisor at [her] earliest convenience and inform him of [her] expected return to work date, and the nature of [her] absence."

46.     Ms. Aliberti stated that she had placed Plaintiff on "unauthorized leave without pay status" and alleged that Plaintiff had not requested a leave of absence and had not explained the nature of her absence.

47.     On April 14, 2011, Carole Bailey, Health Benefits Administrator, sent a letter to Plaintiff's home address explaining how a leave-without-pay status would affect her benefits.

48.     Plaintiff's husband was at home in Menands, New York, and received both letters.

49.     Plaintiff's husband telephoned Plaintiff to tell her the contents of Ms. Aliberti's letter.[57]

50.     On April 18, 2011, Plaintiff wrote to Ms. Aliberti and stated that she was absent pursuant to the FMLA leave that had been previously approved.[58]

---

[57]     *Id.*

[58]     Defendant denies this asserted fact.  (Dkt. No. 70, Attach. 1, at ¶ 52 [Def.'s Rule 7.1 Resp.].)  However, although the evidence cited by Defendant might support its overall argument that the absence was not in fact FMLA leave, it does not address the contention of the asserted fact, namely, what Plaintiff stated in her letter.  (Dkt. No. 69, Attach. 19, at ¶ 52 [Pl.'s Rule 7.1 Statement].)  The letter clearly shows that Plaintiff at least implied that part of her

51.     In her letter, Plaintiff informed Ms. Aliberti that "[o]ur FMLA Coordinator Ms. Pamela Morini knew my moms [sic] situation and provided me the FMLA form."

52.     Plaintiff noted that "[m]y beloved mother's condition is very critical and I have to spend some time with her at terminal stage."

53.     As requested by Ms. Aliberti, Plaintiff also provided her return-to-work date: May 23, 2011.[59]

54.     Her letter was received by the Bureau of Employee Relations and Staff Development on April 29, 2011.[60]

55.     On May 5, 2009, William Bevilacqua of the Bureau of Employee Relations, emailed Connie Plummer of the Office of Insurance Programs, and noted that "[w]e received a letter from [Plaintiff] on April 29, 2011. The letter indicates that [Plaintiff] will probably be returning on May 23, 2011. I do not know that for sure. So far it is a probability."

56.     Despite Plaintiff's assertion that she was taking pre-approved FMLA leave, Mr. Bevilaqua directed payroll to "[p]lease treat this pay period as Unauthorized Leave Without Pay."[61]

57.     On May 23, 2011, Plaintiff returned to work.

---

absence was spent caring for her mother (which she believed qualified as FMLA leave). (Dkt. No. 69, Attach. 14, at 1.) This fact is therefore deemed admitted.

[59]     *See, supra,* note 39 of this Decision and Order.

[60]     *Id.*

[61]     *Id.*

58.     On May 31, 2011, Plaintiff faxed the medical documentation from her mother's physician to Ms. Morini.[62]

59.     Plaintiff spoke also spoke with Ms. Morini and Ms. Marcello on the telephone on May 31, 2011.

60.     Ms. Morini informed her that there was a missing date on the signature on the supporting medical documentation forms.[63]

61.     When Plaintiff asked whether she could get that omission corrected, Ms. Morini told her that it did not matter.[64]

62.     On May 31, 2011, Ms. Morini sent out an interoffice email to Ms. Marcello in which she set out the history of Plaintiff's FMLA request and subsequent absence in April and May 2011.[65]

63.     In her email, Ms. Morini confirmed that, among other things, (1) Plaintiff had requested FMLA leave on December 6, 2010, (2) Plaintiff had said that she would be traveling to Bangladesh to care for her mother, (3) Ms. Morini had verified that Plaintiff was eligible at the time of the December 6, 2010, request, (4) Ms. Morini had sent Plaintiff the paperwork related to that request, (5) Plaintiff was to send

---

[62]     Defendant denies this asserted fact.  (Dkt. No. 70, Attach. 1 at ¶ 61 [Def.'s Rule 7.1 Resp.].)  However, Ms. Morini's declaration (on which Defendant relies, in part) states that Plaintiff faxed FMLA paperwork related to the period from April 4, 2011, to May 23, 2011, including a cover letter addressed to Ms. Morini and a medical certification form; Ms. Morini notes that she did in fact receive this paperwork.  (Dkt. No. 68, Attach. 2, at ¶¶ 43-45 [Morini Decl.].)  This fact is therefore deemed admitted.

[63]     *See, supra,* note 39 of this Decision and Order.

[64]     *Id.*

[65]     *Id.*

the medical documentation on her return to the United States, and (6) Plaintiff had faxed back the same medical paperwork on May 31, 2011.[66]

64.     Ms. Morini states in her email that Plaintiff "never went to Bangladesh, never returned the FMLA paperwork or called to state that she was not going to see her mother," but concedes that Plaintiff did in fact return the paperwork "stating that it was for her trip from 4/4/11 - 5/23/11."[67]

65.     Plaintiff did actually travel to Bangladesh; her April 18, 2011, letter to Ms. Aliberti is postmarked from Bangladesh.[68]

66.     The paperwork that Ms. Morini admits that Plaintiff submitted sets out her mother's medical condition.[69]

67.     Despite these admissions, Ms. Morini notified Ms. Marcello that she would not designate Plaintiff's leave as FMLA because (1) Plaintiff had not stated to her supervisor that she was taking FMLA leave, and (2) Plaintiff had failed to notify Ms. Morini at that time that she was taking leave.[70]

68.     In her email, Ms. Morini gave no other basis for refusing to designate Plaintiff's absence as FMLA leave.[71]

---

[66]     *Id.*

[67]     *Id.*

[68]     *Id.*

[69]     *Id.*

[70]     *Id.*

[71]     *Id.*

69.     Plaintiff believed that there was no requirement that she must have said the words "family medical leave act" when notifying her supervisor that she would be out.[72]

70.     On December 7, 2010, Ms. Morini approved her leave for an undetermined date as discussed in December 2010.  Plaintiff asked when she requested that leave whether she needed to provide any other notice and Ms. Morini answered that Plaintiff was all set.[73]

71.     Further, once Plaintiff became aware (on April 18, 2011) that her employer was unsure of the basis for her leave, she clarified that she was intending to use FMLA leave to care for her seriously ill mother.[74]

72.     Nonetheless, when Plaintiff submitted her paperwork, the NYSDOH took the position that there was nothing Plaintiff could do to make her leave be classified as FMLA leave.[75]

73.     The NYSDOH took the position that any deficiencies in Plaintiff's April 2, 2011, email to her supervisor were fatal and incurable.[76]

74.     On June 24, 2011, Debra Hotaling, Director of Human Resources, sent Plaintiff a letter informing her that her employer was instituting disciplinary proceedings against her for the following charges: (1) being absent from work without

---

[72]    *Id.*

[73]    *Id.*

[74]    *Id.*

[75]    *Id.*

[76]    *Id.*

authorization from April 4, 2011, through May 20, 2011; and (2) falsifying time and accrual records for 9.5 hours over three days in January 2011.[77]

75. The penalty sought was termination.

76. The cover letter noted that the notice was pursuant to the collective bargaining agreement with her union and that it would take effect 14 days from the date of the notice unless she wished to grieve the notice of discipline.

77. Plaintiff grieved the notice and arbitration commenced.

78. Following the arbitration, the arbitrator issued a decision on April 5, 2012.

79. The arbitrator did not uphold the second charge of falsification of time cards on three dates and held that Plaintiff was "not guilty of Charge [Two]."

80. The arbitrator did uphold the first charge of being absent from work without authorization and found that termination from employment was warranted.[78]

81. More specifically, the arbitrator held that "this single proven charge, standing alone, given prior discipline, warrants termination from employment."[79]

82. On April 9, 2012, Ms. Hotaling notified Plaintiff that, "pursuant to the Arbitrator's Executed Award dated April 5, 2012, . . . which was the result of the Notice of Discipline issued to you on June 24, 2011, the Department of Health is implementing the penalty of termination effective April 9, 2012."[80]

---

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.*

### D. Parties' Briefing on the Pending Motions

#### 1. Defendant's Motion for Summary Judgment

##### a. Defendant's Memorandum of Law

In its motion for summary judgment, Defendant asserts two arguments. (Dkt. No. 68, Attach. 1, at 11-22 [Def.'s Mem. of Law].) First, Defendant argues that Plaintiff's claim for FMLA interference must be dismissed as a matter of law. (*Id.* at 12-20.) Defendant concedes that (a) it is an employer for the purposes of the FMLA and (b) Plaintiff was an eligible employee under the standards of the FMLA; however, Defendant argues that Plaintiff has not established that she gave notice of her intention to take FMLA leave in April and May 2011. (*Id.* at 12.) Defendant argues that the April 2, 2011, email to Mr. Pettit stating that she would be out of the office for a few weeks due to "unavoidable circumstances" was insufficient to provide notice of her intention to use FMLA time, and that Plaintiff additionally had not requested that time and had not obtained prior consent to take leave at that time. (*Id.* at 14-15.) Defendant also argues that Plaintiff's April 2, 2011, email does not provide an end date or a reason for her absence as required by the FMLA and notes that Mr. Pettit and Ms. Morini attempted to accommodate Plaintiff's unexplained need for time off by sending multiple inquiring emails, but that Plaintiff did not respond to those emails. (*Id.* at 15-16.) Defendant argues that the request for FMLA leave made in December 2010 cannot serve as notice because it was related to a request for leave in December 2010 or January 2011 that Plaintiff decided not to take. (*Id.* at 17-18.) Defendant further argues that Plaintiff has not established a claim of FMLA interference because (a) she was aware of the proper FMLA procedures she needed to follow given that she had followed them with a previous request for leave, (b) there is no evidence establishing that

Defendant dissuaded her from taking FMLA leave, and (c) Plaintiff would have been terminated regardless of the leave, and therefore her termination cannot be considered interference. (*Id.* at 18-20.)

Second, Defendant argues that Plaintiff's claim for FMLA retaliation must also be dismissed as a matter of law because (a) Plaintiff never exercised her rights under the FMLA given that she did not request FMLA leave for April and May 2011 and failed to provide notice for that time period, and (b) Plaintiff's termination does not give rise to an inference of retaliation given evidence that she had not been penalized for taking previous FMLA leave and that she had received multiple disciplinary notices for other conduct unrelated to her FMLA leave. (*Id.* at 21-22.)

### b. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiff asserts three arguments. (Dkt. No. 71, at 4-6 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that her absence in April and May 2011 to care for her mother was taken during an approved period for FMLA leave, arguing that the December 2010 FMLA leave approval authorized up to 12 weeks of leave between January and December 2011. (*Id.* at 4.)

Second, Plaintiff argues that she provided timely and complete notice of her intention to have the absence in April and May 2011 count as FMLA leave, including (a) a phone call to Ms. Morini on December 6, 2010, and (b) a letter sent on April 18, 2011, that informed Defendant that she was taking the FMLA leave she had requested in December 2010 to care for her mother. (*Id.* at 4-5.) Plaintiff argues that, because she sent this notice on April 18, 2011, at least 35 of her 49 days absent during that period were covered by the FMLA. (*Id.* at 5.)

Third, Plaintiff argues that she was terminated solely based on her absence during the period in April and May 2011, given that the only other charge in the Arbitration Agreement that provided the basis for her termination (related to time card violations) was dismissed by the arbitrator. (*Id.* at 5-6.)

### 2. Plaintiff's Motion for Summary Judgment

### a. Plaintiff's Memorandum of Law

In her motion for summary judgment, Plaintiff asserts seven arguments. (Dkt. No. 69, Attach. 20, at 5-12 [Pl.'s Mem. of Law].) First, Plaintiff argues that the parties are subject to the FMLA because (a) she is considered an eligible employee and (b) Defendant is an employer for the purposes of the FMLA. (*Id.* at 5.)

Second, Plaintiff argues that her leave in April and May 2011 was taken during the approved period because the December 7, 2010, approval notice stated that she was eligible for up to 12 weeks of unpaid leave in a 12-month period calculated as the calendar year. (*Id.*)

Third, Plaintiff argues that she provided timely notice of her intention to take leave because (a) Defendant was aware that her mother suffered from a qualifying serious medical condition, and (b) her notice on December 6, 2010, was given more than 30 days prior to when she took her leave on April 4, 2011. (*Id.* at 5-6.)

Fourth, Plaintiff argues that she provided sufficient notice of her intention to take FMLA leave. (*Id.* at 6-9.) Plaintiff argues that the initial December 6, 2010, notice was sufficient, but that, even if it was not, "once [she] clarified that she was seeking FMLA leave, she was entitled to FMLA protection." (*Id.* at 6.) Plaintiff argues that the December 2010 approval was valid for the entire calendar year and that the April 2011 email to Ms. Morini was sufficient to trigger

Defendant's knowledge that Plaintiff "may be in need of FMLA leave." (*Id.* at 7.) Plaintiff also argues that, in the alternative, she provided clear notice on April 18, 2011, that she was taking FMLA leave to care for her mother, but that, even with such notice, Defendant made no attempt to collect further information about the circumstances. (*Id.* at 7-9.)

Fifth, Plaintiff argues that she was terminated for taking FMLA leave because that was the sole reason put forth in the Arbitration Agreement and because there could be no other explanation for her termination given the Collective Bargaining Agreement that covered the resolution of her previous disciplinary infractions. (*Id.* at 9-10.)

Sixth, Plaintiff argues that Defendant retaliated against her for taking FMLA leave and asserts that (a) she exercised her right to care for her ill mother, (b) she was qualified for her job, (c) she was terminated for taking FMLA leave, and (d) the termination occurred under circumstances giving rise to an inference of retaliatory intent. (*Id.* at 10-11.)

Seventh, and last, Plaintiff argues that she is entitled to compensatory damages based on Defendant's improper conduct. (*Id.* at 11-12.)

### b. Defendant's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's motion, Defendant asserts two arguments. (Dkt. No. 70, at 3-8 [Def.'s Opp'n Mem. of Law].) First, Defendant argues that there is no triable issue of fact as to Plaintiff claim of FMLA interference because Plaintiff has not established that (a) she gave notice of her intention to take leave in April and May 2011, (b) she was entitled to take FMLA leave at that time, or (c) she was denied benefits to which she was entitled under the FMLA. (*Id.* at 3-7.) As to notice, Defendant notes that Plaintiff told Ms Morini that she would be taking leave in December 2010 or January 2011 when she made her December 6, 2010,

FMLA leave request, and argues that this request was conditionally approved only for that specific time period. (*Id.* at 3.) Defendant argues that Plaintiff did not, however, provide notice of her intention to take leave in April and May 2011 because the April 2, 2011, email was not specific enough to constitute notice that she was seeking to use FMLA leave. (*Id.* at 3-4.) Defendant argues that, although Mr. Pettit and Ms. Morini attempted to discern whether the leave was for FMLA through multiple emails, Plaintiff did not respond to their questions on this issue until May 31, 2011, after she had returned from Bangladesh. (*Id.* at 4-5.) Defendant additionally argues that there is no authority for Plaintiff's assertion that notice after-the-fact would be sufficient to entitle her to a retroactive FMLA designation. (*Id.* at 6.) As to Plaintiff's entitlement to FMLA and her assertion that she was denied benefits under the FMLA, Defendant argues that eligibility determinations are made based on the facts available at the time the request is made and that, because the December 6, 2010, request did not indicate an intention to take leave in April and May 2011, Plaintiff was required to submit a new request for that time period. (*Id.*)

Second, Defendant argues that there is no triable issue of fact as to Plaintiff's claim for FMLA retaliation. (*Id.* at 7-8.) Defendant again argues that Plaintiff never actually exercised her rights under the FMLA as to her absence in April and May 2011 because she provided a flawed request and notice. (*Id.* at 7.) Defendant also argues that Plaintiff cannot establish circumstances giving rise to an inference of discrimination because she was not entitled to take leave in April and May 2011, and therefore was not terminated for taking FMLA leave, but rather for being absent from work without authorization. (*Id.* at 7-8.)

## II.    GOVERNING LEGAL STANDARDS

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[81]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).[82]

---

[81]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[82]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[83]  Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[84]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local

---

[83]    *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[84]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

Rule 7.1(b)(3).[85]  Stated another way, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant may succeed on the argument by showing that the argument

possess facial merit, which has appropriately been characterized as a "modest" burden.  *See*

N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined

that the moving party has met its burden to demonstrate entitlement to the relief requested

therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct.

30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL

2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.    ANALYSIS

### A.    Whether the Record Presents a Genuine Dispute of Material Fact as to Plaintiff's Claim for FMLA Interference

After carefully considering the matter, the Court answers this question in the affirmative

for following reasons.

"To succeed on a claim of FMLA interference, a plaintiff must establish that the

defendant denied or otherwise interfered with a benefit to which she was entitled under the

FMLA."  *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016) (citing 29 U.S.C.

§ 2615[a][1]).  In other words, a plaintiff must establish the following five elements: (1) she is an

eligible employee under the FMLA; (2) the defendant is an employer as defined by the FMLA;

---

[85]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

(3) the plaintiff was entitled to take leave under the FMLA; (4) the plaintiff gave notice to the defendant of her intention to take leave; and (5) the plaintiff was denied benefits to which she was entitled under the FMLA. *Graziadio*, 817 F.3d at 424.

There is no dispute between the parties that Plaintiff is an eligible employee under the FMLA or that Defendant is an employer as defined by the FMLA; the first two elements are therefore not in contention.[86]

### 1. Whether Plaintiff Gave Notice of Her Intent to Take FMLA Leave

Under the FMLA, employees are required to provide at least 30 days' notice for leave that is foreseeable, and notice "as soon as practicable under the facts and circumstances" for a need for leave that has arisen unexpectedly. *Bowman v. CSX Transp., Inc.*, 22 F. Supp. 3d 181, 189 (N.D.N.Y. 2014) (Sharpe, J.). An employee need not "expressly assert rights under the FMLA or even mention the FMLA" for notice to be effective. *Bowman*, 22 F. Supp. 3d at 189 (quoting 29 C.F.R. § 825.303[b]). The employer has a duty to obtain any additional required information once the employee has provided sufficient information to put the employer on notice that the employee may be in need of FMLA leave; however, an employer "is not required to be clairvoyant" and the employee must still provide sufficient information from which an employer could reasonably determine whether the FMLA might apply to the leave request. *Bowman*, 22 F. Supp. 3d at 189.

---

[86]    The Court notes that Defendant does not appear to specifically challenge the third element (whether Plaintiff was entitled to take leave under the FMLA) in any detail. Nor does Plaintiff appear to discuss the third element. However, based on the Court's finding of genuine disputes of material fact as to other elements, the Court need not discuss the third element for the purposes of deciding the parties' summary judgment motions.

Defendant argues primarily that Plaintiff's claim must fail because she provided insufficient notice of her intention to take leave specifically in April and May 2011, while Plaintiff argues that she did provide effective notice in the form of (a) the December 6, 2010, request, (b) her email to Mr. Pettit on April 2, 2011, or, in the alternative, (c) her email to Ms. Aliverti on April 18, 2011. (Dkt. No. 68, Attach. 1, at 14-16 [Def.'s Mem. of Law]; Dkt. No. 69, Attach. 20, at 5-9 [Pl.'s Mem. of Law].)

Regarding Plaintiff's December 2010 request, the December 7, 2010, Notice of Eligibility form indicates the following four facts: (1) Plaintiff informed Ms. Morini that she needed leave beginning on an undetermined date for the purpose of caring for her parent due to a serious health condition; (2) Plaintiff was found to be eligible for FMLA leave; (3) Plaintiff was required to return an FMLA medical certification form upon her return to the country so that Defendant could determine whether her absence qualified as FMLA leave; and (4) if her leave qualified as FMLA leave, Plaintiff would have a right to up to 12 weeks of unpaid leave in a 12-month period calculated as the calendar year, from January to December. (Dkt. No. 69, Attach. 5, at 2-3.) However, despite the first and fourth facts in the Notice of Eligibility, Ms. Morini swore in her declaration that, on December 6, 2010, Plaintiff contacted her by phone to request FMLA leave to care for her terminally ill mother in Bangladesh, stating that "she wished to take this trip either at the end of December 2010 or in early January 2011." (Dkt. No. 68, Attach. 2, at ¶ 19 [Morini Decl.].) Notably, Plaintiff does not offer evidence to contradict Ms. Morini's assertion about the expressed time frame for the leave, but rather acknowledges that she "originally planned to visit [her] mother in early 2011, but [she] injured [her] eye in January 2011." (Dkt. No. 69, Attach. 4, at ¶ 13 [Pl.'s Aff.].) As a result of this evidence, the parties

disagree as to whether the first and fourth facts indicated in the Notice of Eligibility mean that Plaintiff was authorized to take FMLA leave without further notice at any time between January and December 2011 (as Plaintiff argues) or that she was authorized to take only the leave she had specifically requested at the time of the request, i.e., in December 2010 or January 2011, without additional notice (as Defendant argues).

Based on the language in the Notice of Eligibility (and the governing law), the Court finds that Plaintiff was authorized to take FMLA leave at any time between January and December 2011, but that she was still required to provide Defendant practicable advanced notice of when such leave would occur. *See* 29 C.F.R. § 825.302(a) (requiring an employee to "provide, whenever possible, at least thirty days' notice for planned medical treatment or for leave that is otherwise foreseeable"); 29 C.F.R. §§ 825.303(a) (requiring an employee to notify his employer "as soon as practicable" for leave that is unforeseeable).

As to whether Plaintiff gave advanced notice of her intention to take FMLA leave beginning in April 2011, Plaintiff stated in her deposition that she informed Ms. Morini in "late March" that she needed to take FMLA in April to travel to Bangladesh to care for her sick mother; she stated also that she had been telling Ms. Morini and Mr. Pettit throughout March that, if she was able to get a plane ticket to Bangladesh, she was going to take it. (Dkt. No. 68, Attach. 5, at 54:3-12, 55:22-25 [Pl.'s Dep.].) This evidence conflicts with Defendant's evidence that Plaintiff had not informed anyone of her intent to take leave before her absence. Given this conflict, there is a genuine issue of material fact as to whether Plaintiff provided oral notice in late March 2011 that would constitute sufficient notice under the FMLA for her absence in April and May 2011.

Regarding the April 2, 2011, email to Mr. Pettit, the Court finds that it was too vague and nonspecific, on its own, to constitute sufficient notice of Plaintiff's intention to take FMLA leave, even considering that Plaintiff was not required to specifically use the words "FMLA" in her notice. The entire substance of this email stated as follows: "I wouldn't [sic] be here (to [the] office) for [a] few weeks due to an unavoidable circumstance. Thanks for your consideration." (Dkt. No. 68, Attach. 7, at 35.) Of note, Plaintiff does not state the reason for her absence, or whether the "unavoidable circumstance" is a medical emergency that might be covered under FMLA or something else that might not be covered under FMLA. Plaintiff appears to argue that, because she had sought (and been granted conditional approval) for FMLA leave in December 2010, she did not need to provide any further information based on Defendant's prior knowledge of her mother's medical condition. (Dkt. No. 69, Attach. 20, at 7-8 [Pl.'s Mem. of Law].) However, given that Plaintiff initially requested leave for an unspecified date expected to occur in December 2010 or January 2011 (which is months prior to when she actually took the leave), the Court finds that Plaintiff's April 2, 2011, does not, by itself, constitute sufficient notice of Plaintiff's intent to take FMLA leave. *See* 29 C.F.R. § 825.303(b) ("When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave. Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act."). However, as noted above, there is a genuine issue of material fact as to whether Plaintiff provided additional oral notice on or about March 28, 2011, of her intent to take leave; if she did provide that notice, Mr. Pettit would have had a more

41

specific context in which to interpret the April 2, 2011, email because he would have already been aware that the absence reported in that email was related to an eligible event under the FMLA.

Lastly, regarding the April 18, 2011, letter to Ms. Aliberti, Plaintiff argues that this letter (which specified that she had gone to care for her mother in Bangladesh) constitutes clear and unequivocal notice of the need for FMLA leave. (Dkt. No. 69, Attach. 20, at 8-9 [Pl.'s Mem. of Law]; Dkt. No. 71, at 4-5 [Pl.'s Opp'n Mem. of Law].) The problem presented by this argument (which Plaintiff acknowledges) is that Plaintiff's absence began on April 4, 2011, 14 days before she sent this notice. (Dkt. No. 68, Attach. 7, at 38.) Moreover, Plaintiff learned of her future absence on or about March 28, 2011, which was 22 days before she sent this notice. Plaintiff does not cite any authority or evidence to support her contention that she had the right to have her leave for the period between April 4, 2011, and April 18, 2011, be retroactively classified as FMLA leave; to the contrary, Ms. Morini's affidavit states that employees "are not permitted to retroactively classify a period of absence as FMLA leave." (Dkt. No. 68, Attach. 2, at ¶ 47 [Morini Aff.].)

However, as noted previously, there is a genuine dispute of material fact as to whether Plaintiff provided notice of the need to take FMLA leave in April and May 2011. The Court therefore need not decide the issue of retroactivity of FMLA leave for the purposes of resolving these motions.

### 2. Whether Plaintiff Was Denied Benefits to Which She Was Entitled Under the FMLA

According to the Complaint, Plaintiff's interference claim alleges that she was denied FMLA benefits in two ways: (1) that, while she was taking her approved FMLA leave, she was

notified that she would be subject to discipline and therefore had to cease her FMLA leave to prevent further discipline; and (2) that Defendant terminated her as a result of taking leave. (Dkt. No. 1, at ¶¶ 21-24 [Pl.'s Compl.].)  However, in her memoranda of law, Plaintiff does not discuss the first alleged way, focusing instead solely on the second alleged way.  (Dkt. No. 69, Attach. 20, at 9-10 [Pl.'s Mem. of Law]; Dkt. No. 71, at 3, 5-6 [Pl.'s Opp'n Mem. of Law].)

With regard to the first alleged way, although Plaintiff relies on a Notice of Discipline and the record supports the fact that the April 12, 2011, letter from Ms. Aliberti informed Plaintiff that she was being placed on unauthorized-leave-without-pay status, the admissible evidence does not support Plaintiff's allegation that she had to cease her FMLA leave to prevent disciplinary action.  (Dkt. No. 68, Attach. 7, at 36.)  The letter from Ms. Aliberti does not state that Plaintiff would be subject to discipline if she did not return immediately from her leave; rather, it states "[p]lease call your supervisor at your earliest convenience to inform him of your expected return to work date, and the nature of your absence.  (*Id.*)  Plaintiff responded to that letter stating, "[i]f everything goes fine then probably I will be joining on May 23, 2011." (*Id.* at 38.)  This letter indicates that, contrary to Plaintiff's allegation in the Complaint, she did not cease her FMLA leave early, but instead returned on a day of her own choosing that was well after the date she responded to the letter.  Notably, in her affidavit, Plaintiff states only that she "provided [her] return to work date" in the response to Ms. Aliberti; she does not indicate that she choose that date based on fear of disciplinary measures or that she would have otherwise taken a longer period of leave, but rather asserts that she clarified to Ms. Aliberti that she was absent on FMLA leave and therefore expressed her belief that she was entitled to be absent. (Dkt. No. 69, Attach. 4, at ¶¶ 52-56 [Pl.'s Aff.].)  Because Plaintiff does not provide any

admissible record evidence to support her allegation that Defendant interfered with her FMLA leave by forcing her to cut that leave short to prevent discipline, this does not provide a sustainable basis for her interference claim. Consequently, the Court will focus on the second alleged way in which she was denied benefits.

"[I]t is well-settled that an employer is not liable for 'interfering' with an employee's leave when the employee would have been terminated regardless of the leave," or when the FMLA leave is not a "negative factor in its decision to terminate" the employee. *Bowman*, 22 F. Supp. 3d at 190-91. "'[P]laintiff need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her,'" which can be done "'by using either direct or circumstantial evidence, or both.'" *Colon v. Fashion Inst. of Tech. (State Univ. of New York)*, 983 F. Supp. 2d 277, 286 (S.D.N.Y. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175-76 [2d Cir. 2006]).

The Court finds that there is a genuine dispute of material fact as to whether Plaintiff's termination was the result of her use of FMLA leave. The evidence (particularly the Arbitration Opinion) supports Plaintiff's argument that her absence in April and May 2011 was a factor in the decision to terminate her. (Dkt. No. 69, Attach. 16, at 17 ["I believe the State has more than adequately made the case that [the charge of being absent without authorization], standing alone, given prior discipline, warrants termination from employment."].) However, as discussed previously, it is not certain on the record before the Court whether Plaintiff's absence was in fact FMLA leave. Because such a question of fact remains, the Court finds that summary judgment is inappropriate.

For all of the above reasons, the Court denies both Defendant's motion for summary judgment and Plaintiff's motion for summary judgment with regard to Plaintiff's first claim.

### B. Whether the Record Presents a Genuine Dispute of Material Fact as to Plaintiff's Claim for FMLA Retaliation

After carefully considering the matter, the Court answers this question in the affirmative for the following reasons.

Claims for retaliation pursuant to the FMLA are analyzed under the same standard that governs other forms of retaliation. In order to establish a prima facie case of FMLA retaliation, the plaintiff must establish the following four elements: (1) the plaintiff exercised rights protected under the FMLA; (2) the plaintiff was qualified for his or her position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Graziadio*, 817 F.3d at 429 (quoting *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 [2d Cir. 2012]). "If the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions; if the defendant does so, the plaintiff must then show that [the] defendant's proffered explanation is pretextual." *Graziadio*, 817 F.3d at 429 (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 [2d Cir. 1996]). In determining whether a plaintiff's exercise of FMLA rights was the cause of the adverse action, a fact finder need only determine that the exercise of FMLA rights was a "negative factor" in that adverse action. *Woods v. START Treatment & Recovery Ctr., Inc.*, 864 F.3d 158, 168-69 (2d Cir. 2017).[87]

---

[87] Defendant argues that, in order to establish a claim for FMLA retaliation, Plaintiff must show that she opposed a practice made unlawful by the FMLA, and that "[m]erely alleging that she was retaliated against for utilizing FMLA leave does not state an FMLA retaliation claim," relying on *Alessi v. Monroe County*, 07-CV-6163, 2010 WL 161488 (W.D.N.Y. Jan. 13,

Plaintiff argues that she has met all of the elements to establish a prima facie case of retaliation, noting that the termination occurred under circumstances giving rise to an inference of retaliation because (a) her absence remained classified as "unexcused" even after she clarified that her leave was under the FMLA, (b) internal emails demonstrate animosity toward her, and (c) Defendant took the position that any deficiencies in her submissions for FMLA leave were incurable and there was no way they would approve her leave as FMLA leave. (Dkt. No. 69, Attach. 20, at 10-11 [Pl.'s Mem. of Law].) Defendant argues in response that Plaintiff cannot establish a claim for retaliation because she was not actually entitled to take FMLA leave in April and May 2011 due to the lack of notice, and she therefore never exercised her rights under the FMLA. (Dkt. No. 68, Attach. 1, at 21-22 [Def.'s Mem. of Law; Dkt. No. 70, at 7-8 [Def.'s Opp'n Mem. of Law].)

Defendant's arguments in support of its motion for summary judgment fail for the same reasons as stated above in Part III.A of this Decision and Order: namely, there is a genuine dispute of material fact as to whether Plaintiff's absence in April and May 2011 was FMLA leave for which she provided adequate notice (and therefore was entitled to take). There is also a genuine dispute as to whether Plaintiff did in fact exercise her rights under the FMLA (i.e., whether her leave in April and May 2011 was actually FMLA leave), which prevents the Court

_____

2010). (Dkt. No. 68, Attach. 1, at 21-22 [Def.'s Mem. of Law]; Dkt. No. 70, at 7-8 [Def.'s Opp'n Mem. of Law].) However, more recently, the Second Circuit has specifically held that "FMLA retaliation claims . . . [based on] terminations for exercising FMLA rights by, for example, taking legitimate FMLA leave, are actionable under [29 U.S.C.] § 2615(a)." *Woods*, 864 F.3d at 167. The Court finds that Plaintiff's termination is therefore a sufficient basis for an FMLA retaliation claim without any showing of opposition to a practice made unlawful by the FMLA.

from granting Plaintiff's motion for summary judgment. For these reasons, the Court denies both Defendant's motion for summary judgment and Plaintiff's motion for summary judgment with regard to Plaintiff's second claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 68) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 69) is **<u>DENIED</u>**; and it is further

**ORDERED** that counsel are direct to appear on **NOVEMBER 1, 2018 at 11:00 am** in Syracuse, NY, in chambers for a pretrial conference, at which time counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to Defendants no later than OCTOBER 5, 2018, and the parties are directed to engage in meaningful settlement negotiations before the conference. In the event that counsel feel settlement is unlikely, counsel may request to participate via telephone conference for the limited purpose of scheduling a trial date by electronically filing a letter request at least one week before the scheduled conference.

Dated: September 21, 2018
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge